UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DOMINICK WILLIAMS,

                Plaintiff,

-against-

POLICE OFFICERS EDWARD DEIGHAN,
MICHAEL MANZOLILLO, WERNER
HELLMAN, and RICHARD PIGNATELLI,

                Defendants.

----------------------------------------------------------X

**REPORT AND RECOMMENDATION**
**05-CV-5596 (NGG) (LB)**

**BLOOM, United States Magistrate Judge:**

Plaintiff, Dominick Williams ("plaintiff"), brings this *pro se* action for false arrest and excessive force pursuant to 42 U.S.C. § 1983 ("§ 1983"). Police Officers Edward Deighan ("Deighan"), Michael Manzolillo ("Manzolillo"), Werner Hellmann ("Hellmann"), and Richard Pignatelli ("Pignatelli") (collectively, "defendants") move for summary judgment pursuant to Federal Rule of Civil Procedure 56(c).[1] The Honorable Nicholas G. Garaufis referred defendants' motion to me for a Report and Recommendation in accordance with 28 U.S.C. § 626(b). It is respectfully recommended that defendants' motion should be granted and plaintiff's complaint should be dismissed.

---

[1] Defendants gave plaintiff the requisite notice under Local Civil Rule 56.2.

## BACKGROUND

The following facts are not in dispute unless otherwise noted.

Plaintiff's complaint alleges that defendants used excessive force when they falsely arrested him on May 14, 2004. At around 12:00 a.m. that morning, plaintiff left his house when his cousin, Yashawn Watts ("Watts"), came to pick him up in a car. Deposition of Dominick Williams, attached to Declaration of Jennifer L. Rubin ("Rubin Dec.") as Exhibit C ("Williams Dep.") at 60. Watts drove plaintiff, who sat in the front passenger's seat of the car, to their friend Eric's home. Id. Eric joined plaintiff and Watts, and they drove in the direction of Fulton Street, headed towards Nostrand Avenue in Brooklyn. Id. at 70.

At approximately 1:35 a.m., the vehicle was in the vicinity of Nostrand Avenue. Affidavit of Edward Deighan, attached to Rubin Dec. as Exhibit E ("Deighan Aff.") at ¶ 6. Defendants were driving in an unmarked police car on routine anti-crime patrol in that area. Deighan Aff. at ¶¶ 4, 11. They observed that Watts's vehicle, which was driving ahead of them, was missing a rear license plate.[2] Id. at ¶ 6. Defendants observed the car make two left hand turns without signaling, and pulled the car over on Herkimer Street in Brooklyn.[3] Id. at ¶ 8. All four plain-clothes officers got out of their vehicle. Defendants Manzolillo and Pignatelli approached the driver's side of the car; Deighan and Hellmann approached the passenger's side of the vehicle. Id. at ¶¶ 9, 10.

---

[2] Plaintiff disputes this fact. When asked at his deposition if he knew whether the car had license plates, plaintiff testified that the car did not have a front license plate but did have a rear license plate. See Williams Dep. at 66.

[3] Plaintiff also disputes that Watts made left hand turns without using his turn signal. Plaintiff testified that he heard the turn signal's "click-click, click-click," and was sure that Watts had used his turn signal. See Williams Dep. at 71-72.

When Deighan approached the passenger's side of the vehicle, he observed plaintiff "make a fast movement by sliding his right hand from the right side of his waist (the side closest to [Deighan]), to the left side. [Deighan] then observed plaintiff clasp his left hand over his right hand. [Deighan] then asked plaintiff to remove his hands from his waist. Plaintiff removed his hands from his waist which revealed the handle of a semi-automatic pistol sticking out of his waistband." Id. at ¶¶ 11-14. Plaintiff claims that Deighan did not say anything to him and pulled him out of his car by his sweater. Williams Dep. at 98. After being removed from the car, plaintiff alleges that Deighan pushed him forcefully, face-first, onto the car. Williams Dep. at 99. Deighan states that "in fear for my own safety as well as the safety of everyone present, I removed plaintiff from the vehicle and placed defendant [sic] against the vehicle. I removed plaintiff from the vehicle to recover the pistol from plaintiff's waistband." Deighan Aff. at ¶¶ 15-16. Plaintiff attempted to catch his fall by putting his hands forward, and he landed, palms down, on the side of the vehicle. Williams Dep. at 101. Upon hitting the car, plaintiff felt his right-hand pinky finger "snap," and instantly felt great pain. Id. at 102. Aside from being pulled out of the car and pushed against it, plaintiff concedes that defendants used no other force against him at this time. Id. at 108.

Plaintiff panicked, fled the scene, and ran away from defendants down Nostrand Avenue. Id. at 105. Plaintiff claims that when he ran from the car, the only items on his person were his keys, cell phone, hat, shirt, and do rag. Id. at 108. After running for about three blocks, plaintiff was cornered by two marked police cruisers. Id. at 112-113. Three or four officers got out of the car, and plaintiff believes that a few of them grabbed him from behind, although he never saw the faces of the apprehending officers. Id. at 120. He was placed face down on a set of steps. Id. Plaintiff avers that the apprehending officers punched him in his head multiple times, and he believes that "a few

3

. . . probably like three or four" punches actually landed on the top and sides of his head from more than one set of hands. See id. at 121-123. Next, the officers handcuffed plaintiff, put him in a police vehicle, and drove him to the precinct. Id. at 122, 124. Deighan "recovered a pistol [a] short distance from where plaintiff was apprehended, which [he] believed belonged to plaintiff. The pistol was a 9mm Beretta semi-automatic pistol with twelve rounds in the magazine, and one round (ready to be fired) in the chamber." Deighan Aff. at ¶¶ 21-22.

On May 16, 2004, plaintiff was charged with Criminal Possession of a Weapon in the Second, Third, and Fourth Degrees, and Resisting Arrest. Id. at 147. A jury convicted plaintiff of Criminal Possession of a Weapon in the Third Degree and Resisting Arrest. Deighan Aff. at ¶ 23. Plaintiff is currently serving a six-year jail sentence as a result of this conviction. See Certificate of Disposition Indictment, attached to Rubin Dec. as Exhibit D.

## PROCEDURAL HISTORY

Plaintiff filed his *pro se* complaint on September 2, 2005 in the United States District Court for the Southern District of New York. See Docket Entry 2. On October 17, 2005, the Honorable Chief Judge Michael B. Mukasey transferred the action to this Court. See Docket Entry 3. Defendants filed an answer to plaintiff's complaint on May 4, 2006. See Docket Entry 15. The Court held several conferences,[4] directed the exchange of initial disclosures, and set October 6, 2006 as the deadline for the parties to complete discovery. See Docket Entry 26. Defendants requested

---

[4] The conference minutes from July 19, 2006 reflect that "the Court addressed discovery issues." Docket Entry 25. Plaintiff had filed a "motion for full discovery" on July 17, 2006 that was discussed at this conference. This motion remained on the docket until February 21, 2007, when it was denied as moot as it had been addressed at the July 19 conference and the deadline for discovery had passed. See Docket Entry 37.

a thirty-day extension of the discovery period, which the Court granted on October 6, 2006. See Endorsed Order on Docket Entry 30. On December 17, 2006, plaintiff requested "an extension on this case till I get my criminal case overturn." Docket Entry 33. The Court denied the request by endorsement dated January 5, 2007.[5] See id. Defendants filed a motion for summary judgment, dated February 16, 2007, pursuant to Rule 56 of the Federal Rules of Civil Procedure. See Docket Entry 39. After defendants' motion was filed, plaintiff again requested an extension "on my civil case on till I get notified promptly decision from the appellate judge's [regarding his criminal conviction]." Docket Entry 38. I directed plaintiff to file his opposition to the motion by March 31, 2007. Id. Plaintiff never filed an opposition.[6]

---

[5] The Court denied plaintiff's request for an extension of time "till I get my criminal case overturn" on January 5, 2007. On February 21, 2007, the United States Supreme Court decided Wallace v. Kato and stated "[i]f a plaintiff files a false arrest claim before he has been convicted (or files any other claim related to rulings that will likely be made in a pending or anticipated criminal trial), it is within the power of the district court, and in accord with common practice, to stay the civil action until the criminal case or the likelihood of a criminal case is ended." 127 S.Ct. 1091, 1098 (2007). Because Wallace was not yet decided when the Court denied plaintiff's request, and because Heck v. Humphrey, 512 U.S. 447, 486-87 (1994), still controls here as plaintiff was already convicted, plaintiff's motion for an extension was properly denied. See infra Part II.

[6] Rule 56.1 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York ("Local Rule 56.1") requires a party moving for summary judgment to submit "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which the moving party relies in arguing that there is no genuine issue to be tried. See Local Rule 56.1(a); see also Gianullo v. City of N.Y., 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). Plaintiff did not file a counter-statement under 56.1(b) controverting the facts in defendants' 56.1 statement. As such, the Court may deem the facts in defendants' Rule 56.1 statement admitted. See Local Rule 56.1(c). However, the Court may not rely solely on the statement of undisputed facts contained in the Rule 56.1 statement: "[i]t must be satisfied that the citation to the evidence in the record supports the assertion." Vt. Teddy Bear Co., Inc. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004); see Gianullo, 322 F.3d at 143 n.5. Therefore, the Court deems admitted only those facts in defendants' Rule 56.1 statement that are supported by admissible evidence and not controverted by the record.

## DISCUSSION

### I. Standard of Review

Summary judgment should be granted if the pleadings, depositions, answers, interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "A dispute regarding a material fact is genuine 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" Lazard Freres & Co. v. Protective Life Ins. Co., 108 F.3d 1531, 1535 (2d Cir. 1997) (quoting Anderson, 477 U.S. at 248 ); see also Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000). For the purposes of summary judgment, the facts here are viewed in the light most favorable to plaintiff.

"An adverse party may not rest upon the mere allegations or denials of the adverse party's pleading, but ... must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e); see Matsushita, 475 U.S. at 586-87 (1986). In other words, the non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation ... are insufficient to create a genuine issue of fact." Niagra Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d

Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). When a party is proceeding *pro se*, the Court is obliged to "interpret that party's supporting papers liberally, that is, 'interpret them to raise the strongest arguments that they suggest.'" Forsyth v. Fed'n Employment and Guidance Serv., 409 F.3d 565, 569 (2d Cir. 2005) (quoting Burgos v. Hopkins, 14 F.3d 787, 790 (2d Cir. 1994)).

## II. Plaintiff's False Arrest Claim is Barred by Heck v. Humphrey

Plaintiff alleges that defendants falsely arrested him on May 14, 2004 in violation of his constitutional rights. The Court addresses plaintiff's claim that defendants used excessive force when they arrested him in Section III below.

In Heck v. Humphrey, the United States Supreme Court held that

> in order to recover damages for allegedly unconstitutional conviction or imprisonment, or for other harm caused by actions whose unlawfulness would render a conviction or sentence invalid, a § 1983 plaintiff must prove that the conviction or sentence has been reversed on direct appeal, expunged by executive order, [or] declared invalid by a state tribunal . . . A claim for damages bearing that relationship to conviction or a sentence that has *not* been so invalidated is not cognizable under § 1983.

512 U.S. 477, 486-87 (1994). The rule in Heck, limiting collateral attacks in federal court on state court convictions, stems from judicial concerns "for finality and consistency." Id. at 485. Moreover, the requirement that a litigant prove that the underlying criminal proceeding terminated in his favor before bringing a § 1983 claim for damages

7

> avoids parallel litigation over the issues of probable cause and guilt . . . and it precludes the possibility of the claimant . . . succeeding in the tort action after having been convicted in the underlying criminal prosecution, in contravention of a strong judicial policy against the creation of two conflicting resolutions arising out of the same or identical transaction.

Id. at 484 (quoting 8 S. Speiser, C. Krause, & A. Gans, American Law of Torts § 28:5, p. 24 (1991)). Based on this rationale, the Heck Court held that the "principal that civil tort actions are not appropriate vehicles for challenging the validity of outstanding criminal judgments applies to § 1983 damages actions that necessarily require the plaintiff to prove the unlawfulness of his conviction or confinement." Id. at 486. See also Younger v. City of New York, 480 F.Supp.2d 723, 730 (S.D.N.Y. 2007) (false arrest and false imprisonment claims barred by plaintiff's conviction).

Here, a jury convicted plaintiff of Criminal Possession of a Weapon in the Third Degree and Resisting Arrest. Deighan Aff. at ¶ 23. Plaintiff's claim that he was falsely arrested is "challenging the validity of [his] outstanding criminal judgment[]," and would necessarily "require the plaintiff to prove the unlawfulness of his conviction or confinement." Id. Therefore, plaintiff's false arrest claim is not cognizable under § 1983. As his conviction has not been invalidated, his instant § 1983 claim is barred by Heck. 512 U.S. at 486-87.

Even if plaintiff's conviction was overturned, however, "under New York law, the existence of probable cause is an absolute defense to a false arrest claim." Jaegly v. Couch, 439 F.3d 149, 152 (2d Cir. 2006); see Singer v. Fulton County Sheriff, 63 F.3d 110, 118 (2d Cir. 1995) ("There can be no federal civil rights claim for false arrest where the arresting officer had probable cause."). Moreover, "the elements of a false arrest claim under § 1983 are substantially the same as the elements of a false arrest claim under New York law." Mitchell v. Home, 377 F.Supp.2d 361, 371

(S.D.N.Y. 2005) (citing Boyd v. City of N.Y., 336 F.3d 72, 75 (2d Cir. 2003)) (other citations omitted).

Probable cause "is not a particularly demanding standard." United States v. Scala, 388 F. Supp. 2d 396, 401 (S.D.N.Y. 2005). It is determined by looking at what facts an officer had available at the time of, and immediately prior to, arrest. See Caldarola v. Calabrese, 298 F.3d 156, 162 (2d Cir. 2002). Probable cause determinations look to the totality of the circumstances. Id. A police officer who has probable cause to arrest the plaintiff is justified in doing so. Panetta v. Crowley, 460 F.3d 388, 395 (2d Cir. 2006) (probable cause "requires an officer to have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested").

In the instant case, Deighan had probable cause to arrest plaintiff. He witnessed a pistol in the waistband of plaintiff's pants. Deighan Aff. at ¶¶ 11-14. Furthermore, plaintiff was driving in a car without a license plate, carrying a gun on his person, and fled when Deighan attempted to arrest him. See id. at ¶¶ 5, 6, 14, 19, 21. Moreover, Deighan recovered a gun like the one he observed in plaintiff's waistband a short distance from where plaintiff was apprehended, which was both loaded and ready to be fired. Id. at ¶¶ 21-22. Therefore, even if the action was not barred by Heck, as plaintiff's arrest was supported by probable cause, defendants' motion for summary judgment on plaintiff's false arrest claim should be granted.

## III. Plaintiff's Excessive Force Claim

A police officer's use of force during the course of an arrest may violate the Fourth Amendment "if it is objectively unreasonable in light of the facts and circumstances confronting [the police], without regard to their underlying intent or motivation . . . [N]ot every push or shove, even

9

if it may later seem unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Maxwell v. City of N.Y., 380 F.3d 106, 108 (2d Cir. 2004) (quoting Graham v. Connor, 490 U.S. 386, 396, 397 (1989)) (internal quotations omitted). To determine reasonableness, a court must balance "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake." Kerman v. City of N.Y., 261 F.3d 229, 239 (2d Cir. 2001). A court must also consider "the severity of the crime at issue, whether the suspect poses an immediate threat to the safety of the officer or others, and whether the suspect is actively resisting arrest or attempting to evade arrest by flight." Hemphill v. Schott, 141 F.3d 412, 417 (2d Cir. 1998) (quoting Graham, 490 U.S. at 396). Furthermore, police officers may need to use some force in the course of an arrest, "particularly where they are forced to make split-second judgments in tense or dangerous situations." Espada v. Schneider, 522 F.Supp.2d 544, 555 (S.D.N.Y. 2007) (citing Maxwell, 380 F.3d at 108).

Here, plaintiff posed an immediate threat to the safety of the officers and others. Officer Deighan observed a pistol in plaintiff's waistband and plaintiff appeared to be reaching for the gun before Deighan pulled him out of the car. See Deighan Aff. at ¶¶ 11-12, 14. Deighan states that he feared for his and his fellow officers' safety, and he removed plaintiff from the vehicle to recover the pistol. Id. at ¶¶ 15-16. In Deighan's attempt to arrest plaintiff, he pushed plaintiff "straight towards the vehicle" and plaintiff "put [his] hands in front" because he "didn't want to go face first" into the car. Williams Dep. at 99. Construing the facts in the light most favorable to plaintiff, even if Deighan did pull him out of the vehicle by his sweater and throw him forcefully against the car, Deighan did not use unreasonable force under the circumstances presented. Although plaintiff alleges he broke his pinky finger when Deighan pushed him against the car, the force that defendant used did not rise

to the level of a constitutional violation. Compare Espada, 522 F.Supp. at 555 (officer's actions violated the Constitution when he hit plaintiff with a nightstick after plaintiff was handcuffed and in the police cruiser). Here, Deighan was forced to make a split-second judgment in a tense and dangerous situation. Therefore, the force used to push plaintiff against the car to remove the gun was *de minimis* and reasonable under the circumstances.[7]

As to the other defendants, it is well established that § 1983 imposes liability *only* upon a defendant who personally "subjects, or causes to be subjected" to a deprivation of a right secured by the Constitution and laws. Rizzo v. Goode, 423 U.S. 362, 370-71(1976). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (internal quotations omitted). "[T]he 'personal involvement' requirement is satisfied where a plaintiff demonstrates that a defendant directly participated in the acts alleged to constitute a violation of plaintiff's rights." Wallace v. Conroy, 945 F.Supp. 628, 637 (S.D.N.Y. 1996). When a plaintiff fails to allege direct and personal involvement in purported unlawful conduct in his complaint, that claim is "fatally defective" on its face. Black v. United States, 534 F.2d 524, 527-28 (2d Cir. 1976).

Here, plaintiff names all four officers in his complaint, but alleges that only Deighan used excessive force to effect his arrest. See Williams Dep. at 99 ("When I was outside the vehicle then [Deighan] forced me into the vehicle . . . when he slammed me I tried to put my hands in front . . . I didn't want to go face first.") When plaintiff was asked whether he had any physical or verbal contact with Manzolillo or Pignatelli, plaintiff responded "no." See Williams Dep. at 76, 78.

---

[7] Because the Court finds that Deighan did not use excessive force to effect plaintiff's arrest, the Court need not reach defendants' qualified immunity argument.

11

Moreover, although plaintiff claims that "lieutenant [Hellmann] tried to yank me down to the ground," he merely relies on the transcripts from his grand jury proceedings for this information. <u>See</u> <u>id.</u> at 107. Plaintiff testified that he does not know which officer "yanked [him] down" nor what any of the other officers who apprehended him when he tried to flee looked like. <u>See</u> <u>id.</u> at 107, 76-78, 82-84, 85-87. Plaintiff only alleges that "P.O. Edward Deighan pulled me out the [sic] vehicle for no reason and throw [sic] me on the side of the vehicle and broken [sic] my pinkie finger on my right hand." Docket Entry 2 at 3. He fails to demonstrate that any other named defendant used excessive force against him on May 14, 2004.

## CONCLUSION

Accordingly, it is respectfully recommended that defendants' motion for summary judgment should be granted and plaintiff's action should be dismissed.

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/S/
LOIS BLOOM
United States Magistrate Judge

Dated: August 15, 2008
       Brooklyn, New York